**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:
**Kendall Lake Towers**
**Condominium Association, Inc.**                    **Case 16-12114-RAM**
Debtor                                                    **Ch 11**
————————————/

**Kendall Lake Towers, Condominium**

**Association, Inc.**

                    **Plaintiff,**                              **Adversary Proceeding Number:**

            **v.**

**First Condo Management LLC**

                    **Defendant,**

————————————————/

## COMPLAINT

**COMES NOW,** Plaintiff-Debtor, Kendall Lake Towers Condominium Association, Inc. (hereinafter, "Plaintiff" or "Association") by and through its undersigned Counsel and sues Defendant-Creditor First Condo Management LLC (hereinafter, "Defendant" or "First Condo:) and respectfully alleges the following:

### JURISDICTION

1. On 2/16/16 the Association filed a voluntary petition (hereinafter, "Petition") for relief under chapter 11 of the Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Florida.

2. On 6/21/16, the Defendant filed Claim 11 for unliquidated damages in this case pursuant to pending litigation in Florida State Court 11th Judicial Circuit, Miami-Dade County, against the Debtor (Case No. 2013-47233 CA 01). The State Court case was stayed pursuant to the Bankruptcy Stay.

3.  This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. § 1334 and Bankruptcy Rules 7001 and 3007(b).

4.  This is a core proceeding for which the Court is authorized to hear and determine all matters regarding this case in accordance with 28 U.S.C. §§ 157(b)(2) (A)(B) (C) (E) and (H).

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## PARTIES

1.  Association is a is a Non-Profit corporation duly organized under the laws of the State of Florida, and is a condominium Association pursuant to Chapter 718, Florida Statutes.

2.  Defendant is a Florida for Profit Limited Liability Company duly organized under the laws of the State of Florida.

3.  Upon information and belief Defendant is a company which is engaged in the business of providing property management services to Condominium Associations.

4.  Defendant is a creditor of the Plaintiff –Debtor.

5.  Defendant provided Property Management services to the Plaintiff under a written contract.

## STATEMENT OF FACTS

6.  Defendant is a Property Management Company of Plaintiff, which managed the Plaintiff's Condominium Association pursuant to a management contract.

7.  The Defendant served as a Property Manager from 2008 through 2012.

8.  On June 15, 2012, the Board of Directors at that time executed the last renewal of the contract (hereinafter, "First Condo Contract") between Plaintiff and Defendant.

### *KLT Board's Practice of Nepotism & The First Condo Contract*

9. The First Condo Contract was renewed on favorable terms from 2008-2012 because the Board President was the Brother of one of the principals of First Condo.

10. From 2008 through 2012 the Association's Board was comprised of Julio Lago (hereinafter, "J LAGO"), Anthony Cecchini, and Maria Elena Arteche, (the "Prior KLT Board").

11. The Prior KLT Board had a long history of abusing the powers, duties and responsibilities entrusted to them as Board of Director Members for the Association.

12. From 2008 through 2012, the Prior KLT Board routinely engaged in (i) self-dealing and habitually made fiscally irresponsible decisions which caused great financial harm and peril to the Membership of the Association.

13. Julio Lago served as President of the Board and exercised complete control over his fellow Board Members.

14. Julio Lago was the principal of the former developer for the Association and as part of the turnover installed himself as President and stayed on the Board for years after the Association was allegedly turned over to the owners.

15. Julio Lago regularly employed friends, business associates and family members to provide goods and services for hire to the Association often at inflated prices and without properly bidding out the work.

16. In addition to the foregoing, Julio Lago failed to disclose his conflicts of interest to the Association and properly abstained from voting on these contracts.

17. Not only did the KLT Board under Julio Lago engage actively in Nepotism, the Prior KLT Board consistently failed to conduct business of the Association at Board Meetings, as required by the Florida Statutes, and failed to comply with the Association's Governing Documents.

18. First Condo and its CAM Juan Carlos Lago facilitated and covered up the the malfeasance of the prior KLT Board.

### *The First Condo Contract- A Sweet Heart Deal*

19. During the entire tenure of the Prior KLT Board they employed First Condo as the Association's Property Management Company which provided management services to the Association.

20. Additionally, pursuant to its contract, First Condo was required to provide a Licensed Community Association Manager (hereinafter, "CAM") to the Association.

21. Juan Carlos Lago who is the Brother of Julio Lago served as the Association's CAM.

22. It is believed that Juan Carlos Lago has a financial stake in First Condo Management.

23. Upon information and belief, First Condo is owned by J Lago's family/Friends.

24. During the years 2008 through 2012, the Association awarded "sweetheart" contracts to First Condo and the individual CAM- Juan Carlos Lago.

25. By way of example, the Association paid First Condo the following yearly amounts for their "management fees":

     *a.  Year 2008 $164,388.00;*

     *b.  Year 2009 $269,871.00;*

     *c.  Year 2010 $367,630.00*

     *d.  Year 2011 $431,011.00*

26. To put these numbers in perspective, one only needs to know that at the time the Association was paying these exorbitant fees to First Condo, the amount paid represented in excess of half of the yearly budget.

27. The 2016 Budget projected $877,992.00 in revenues.  Even with today's higher numbers, the 2011 fees paid to First Condo represented 49% of the yearly budget.

## *The Fees of the Management Companies Replacing First Condo*

28. When the new board took control of the Association, they hired management companies and CAMs and paid them "normal market rates" for management companies.

29. It shocks the conscience to see the stark contrast between the prices paid to First Condo and the two successor companies, Universal Property Management (hereinafter, "Universal") & Prestige Association Consultants, Inc (hereinafter, "Prestige").

30. In contrast, please note the rates paid to Universal and Prestige:

> ***a. Universal (2013-2015) –Yearly Management Fee of $47,500.00***
> ***b. Prestige (Jan, 2015-present)-2016 Yearly Fees of $29,711.***

31. Additionally, please see the Affidavit of Frank Landrian who is the principal of Prestige, the Current Management Company/Cam.

32. In the Affidavit, Landrian states that he has reviewed the First Condo Agreement with Plaintiff.  Affiant states:

> ***"that it would be virtually impossible to secure a management contract in the Kendall Lakes area from a condominium association at the rates First Condo was charging in the Contract due to (i) the competition in the area; and (ii) the fact that most communities would not be able to bear such a cost absent substantial increases to their monthly maintenance."***

## *The Non-Compliance of the First Condo Contracts with Florida Law*

33. In addition to the foregoing, the First Condo were invalid and did not comply with Florida Law specifically, Florida Statute 718.3025.

34. Pursuant to FS 718.3025, the management contracts between First Condo and the Association were required to:

a. Specify those costs incurred in the performance of these services.

b.  Specifies the services, obligations, and responsibilities of the party contracting to provide maintenance or management services to the unit owners.

   c. Specifies those costs incurred in the performance of those services, obligations, or responsibilities which are to be reimbursed by the association to the party contracting to provide maintenance or management services.

   d. Provides an indication of how often each service, obligation, or responsibility is to be performed, whether stated for each service, obligation, or responsibility or in categories thereof.

   e. Specifies a minimum number of personnel to be employed by the party contracting to provide maintenance or management services for the purpose of providing service to the association.

   f. Discloses any financial or ownership interest which the developer, if the developer is in control of the association, holds with regard to the party contracting to provide maintenance or management services.

   g. Discloses any financial or ownership interest a board member or any party providing maintenance or management services to the association holds with the contracting party.

35. The management contracts entered into by First Condo did not comply with 718.3025, as a Licensed CAM, it was First Condo's duty to ensure that all contracts with the Association comply with Florida Statutes.  Ironically, it was their own contract which did not comply with the Florida Statutes.

### *Abuse & Self-Dealing By Prior Board and First Condo*

36. **No Accounting For $1,000,000.00 in Hurricane Wilma Insurance proceeds.**

   a. Upon information and belief, the Association's insurance carrier paid over $1,000,000.00 relating to the Association's Hurricane Wilma Claim.

   b. Of this entire amount, the Association is only able to trace one deposit of $370,000.00 into the Association's bank account.  As of this date, the remainder of the funds is completely unaccounted for.

   c. Of the $370, 0000.00 received in the Association's bank account, $343,000 was gradually wired into an account of Preferred Alliance Group.  Julio Lago was the previous manager of Preferred Alliance Group, which was managed by Julio Lago's brother-in-law, Francisco Torres.  There was no reason to pay $343,000 to Preferred Alliance Group.

   d. In conclusion, the prior KLT Board with the assistance of First Condo, misplaced, misapplied, and mismanaged over $1,000,000.00 in insurance proceeds.

    e.  The Prior KLT Board and First Condo failed to use the proceeds to make the necessary repairs which were needed to the Association property.

37. **First Condo's Failure to collect converter reserves from his Brother- Julio Lago.**

    a.  The Association's original Developer, First JT, LLC (hereinafter, "Developer") was obligated to adequately fund reserve accounts of the Association pursuant to Florida Statutes.

    b.  The Managing Member of the Developer was Julio Lago, the Former President of the Association and Brother of Juan Carlos Lago of First Condo.

    c.  The Developer collects funds from the Buyers at closing in order to fund the converter reserves.

    d.  A review of the HUD-1 closing statements in the Association shows that the Purchasers were charged for funding converter reserves. Even though the purchasers were charged for the converter reserves at closing, no converter reserve account was ever located.

    e.  It is estimated that the Developer collected over $389,999.64 from Buyers of units in the Association. Said monies were never deposited in the Association's Account and the monies remain unaccounted for.

    f.  Defendant First Condo Breached its fiduciary duties when it allowed the Converter Reserves to remain unfunded and did not seek to collect these funds from the CAM's Brother Julio Lago.

    g.  Based on the foregoing, the Association had an obligation to file suit against the Developer to collect the converter reserves which were unaccounted for.

38. **Mismanagement of Association Funds**

    a.  A review of Audits conducted of the Association's books and records reflect that the KLT Board and First Condo routinely mismanaged Association funds and hundreds of thousands of dollars remain unaccounted for.

    b.  By way of example, per the "turnover" audit dated December 31, 2008, the Association's "Cash in Bank" shows a total of $144,282.00 in operating funds. Notwithstanding the foregoing, the calendar year audited financial statements for the year ending on December 31, 2008, shows cash on hand on the balance sheet which reflects only $27,862.00 with $7,862.00 in operating funds and $20,000.00 in reserves. There is no explanation as to why two different balance sheets exist.

    c. IN addition, the "fund balances" listed within the December 31, 2008, "turnover' audit shows a total of $455,741 all in operating funds. However, the calendar year audited financial statements for the year ending December 31, 2008, has a fund balance on its balance sheet of only $65,011, with $45,011.00 in operating and $20,000.00 in reserves.

    d. First Condo was responsible for the accounting of the Association and breached its contractual obligation by its failure to properly account for the Association funds.

39. **Mis-Use of Association Employees**

    a. While he was Board President, Julio Lago owned multiple units within the Association which he would rent out to Third Parties for a profit.

    b. Julio Lago would routinely engage in Self-Dealing by using Association Employees to help run his condo rental business.

    c. These Association "employees" were paid using Association funds.

    d. Upon information and belief, many of the Associations employees did little or no work which actually benefited the Association while many of these employees spent the majority of their work day assisting Julio Lago in his private business ventures including the leasing out of his units.

40. **The Improper Special Assessments**

    a. The Prior KLT Board passed three special assessments from April 26, 2011 through April 28, 2012. Specifically,
        i. April 26, 2011      $187,000.00
        ii. January 16, 2012    $1,900,000.00
        iii. April 18, 2012     $2,300,000.00

    b. These special assessments were imposed by the Prior KLT Board for among other things critical repairs to the KLT Complex.

    c. On or about March 11, 2013, an evidentiary hearing revealed that the special assessments were done contrary to Florida Law. The record reveals that these special as assessments "were imposed behind closed doors without notice or a vote".

    d. At the March 11, 2013 hearing, the Miami-Dade Circuit Court entered an Order which set aside and vacated all of the foregoing Special Assessments.

    e. First Condo assisted the Prior KLT Board in imposing improper Special Assessments in the Community.

41. **The APC Contract**

   a. The record reflects that immediately after the passing of the third special assessment off $2,300,000.00 the Association entered into another "sweetheart" contract with APC Engineering Enterprises, Inc, whose owner is a close friend and colleague of Julio Lago.

   b. On June 4, 2012, the Association entered into project managements and construction services on the Association's property with APC for a total project price of $4,190,190.47 ("APC Agreement").

   c. The Board alleged that the APC contract was necessary because the building was in imminent danger of collapse.

   d. At the March 11, 2013 hearing, the Court heard testimony from a witness that testified the building did not need the repairs alleged by the Prior KLT Board and as set forth in the APC Contract. The following witness testified:

      i. Don Hodges, Professional Engineer, testified that the Structure of the building was sound, contrary to allegations of imminent collapse of the walls of the building as alleged by Julio Lago.

   e. The APC contract benefited Julio Lago and Juan Carlos Lago/First Condo.

   f. The contract was awarded to APC whoose President, David DiPuglia was a close associate of Juan Carlos Lago/ First Condo. See Testimony of Julio Lago at March 11, 2013 hearing. David Di Puglia sat on other Condominium Boards with Julio Lago. Id.

### The $ 374,000.00 Kickback

   g. The Contract was subject to a side deal that APC would pay $ 374,000.00 to Preferred Alliance Group, LLC, a company which was owned by Julio Lago and his wife. The contract with the "Kickback" was executed while Julio Lago was on the Board and while Juan Carlos Lago was the CAM and FIRST CONDO was the property manager.

   h. The APC contract contained a provision that listed Juan Carlos Lago- CAM, as the "representative' of the Association for the purposes of the Contract.

   i. At the March 11, 2013 hearing, Vinson Richter, a contractor for 30 years testified that he has been involved in hundreds of contracts in his year as a contractor and the contract between the Condo Association and APC Engineering was "highly irregular" in that the Customer Representative was Juan Carlos Lago, the Brother of the President of the Association. The record reflects that the initial payment made to APC pursuant to the Contract went from the Association to Preferred

(Julio Lago's Company). That according to an investigation into the Association's accounts made by Association Receiver, Mr. Alan Becker, Esq., $343,000.00 was wired into the bank account of Preferred.  At a later date APC acknowledged receipt of said funds.

j.  First Condo as property manager enabled the $ 374,000.00 kickback to a Board Member.

42. **First Condo Failure To Turn Over Records to the Association.**

a.  After the Recall of the Prior KLT Board, First Condo abandoned its post and ceased providing services to the Association.

b.  A dispute arose between the parties as to whether First Condo was terminated or not.

c.  Eventually a new property management company took over KLT.  This new management company was Universal.

d.  At that time, the Association was also under a Receivership.  The Court Appointed Receiver was Richard Baron.

e.  Both the Receiver and Universal requested that First Condo turn over the Association records to Universal as the Agent for the Association.

f.  First Condo alleged that money was due to First Condo and that he would not turn over the Association Records until he got paid in full.

g.  After repeated requests for the Association records, on November 5, 2012, First Condo sent a letter which stated:

> "*"we cannot consent to providing you with any more documentation until our invoices are fully paid and our property returned to us."*

h.  First Condo violated Florida Law by holding the Association Records "hostage" until it was paid an alleged debt.

i.  The Association has been prejudiced by First Condo's actions and is still affected today by First Condo's actions in depriving the Association of its records from 2008-2012.

## COUNT I – RECISION PURSUANT TO FLORIDA STATUTE 718.3025

43. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

44. The agreement between FIRST CONDO and KLT is void on its face because it fails to meet specific requirements found in Fla. Stat. §718.3025 which regulate contracts between community association and community association management companies.

45. Fla. Stat. §718.3025 clearly outlines a series of six (6) requirements that, if applicable, must be included in a properly drafted community association contract.

46. Pursuant to Fla. Stat. §718.3025-- No written contract between a party contracting to provide maintenance or management services and an association which contract provides for operation, maintenance, or management of a condominium association or property serving the unit owners of a condominium shall be valid or enforceable unless the contract:

h. Specifies the services, obligations, and responsibilities of the party contracting to provide maintenance or management services to the unit owners.

i. Specifies those costs incurred in the performance of those services, obligations, or responsibilities which are to be reimbursed by the association to the party contracting to provide maintenance or management services.

j. Provides an indication of how often each service, obligation, or responsibility is to be performed, whether stated for each service, obligation, or responsibility or in categories thereof.

k. Specifies a minimum number of personnel to be employed by the party contracting to provide maintenance or management services for the purpose of providing service to the association.

l. Discloses any financial or ownership interest which the developer, if the developer is in control of the association, holds with regard to the party contracting to provide maintenance or management services.

m. Discloses any financial or ownership interest a board member or any party providing maintenance or management services to the association holds with the contracting party.

47. The Agreement between KLT and FIRST CONDO does not meet the requirements of §718.3025 as the contract is clearly missing the disclosure requirements in §718.3025(1)(e) and (f) and does nothing to specify a minimum amount of personnel as required by §718.3025(d).

48. The Agreement is also vague as to the requirements in §718.3025 (b) and (c).

49. The Agreement on its face is void under §718.3025, and procedurally unconscionable.

50. That the Association has no adequate remedy at law.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, requests this Court grant the relief it is seeking and rescind the June 15, 2012 agreement in favor of Kendall Lake Towers Condominium Association, Inc, and grant such other and further relief as this Court deems just and proper, including but not limited to an award of attorneys' fees and Court costs pursuant to Florida Law.

## COUNT II- RECISION PURUSANT TO FLORIDA STATUTE 617.0832

51. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

52. The agreement between FIRST CONDO and KLT is void on its face due to a violation of Fla. Stat. §617.0832, because of the undisclosed conflicts between FIRST CONDO and the Prior KLT Board.

53. Florida Statute §617.0832-- Directors of conflicts of interest, provides, no contract or other transaction between a corporation and one or more of its directors or any other corporation, firm, association, or entity in which one or more of its directors are directors or officers or are financially interested shall be either void or voidable because of such relationship or interest, because such director or directors are present at the meeting of the board of directors or a committee thereof which authorizes, approves, or ratifies such contract or transaction, or because his or her or their votes are counted for such purpose, if:

a. The fact of such relationship or interest is disclosed or known to the board of directors or committee which authorizes, approves, or ratifies the contract or transaction by a vote or consent sufficient for the purpose without counting the votes or consents of such interested directors;

   b.   The fact of such relationship or interest is disclosed or known to the members entitled to vote on such contract or transaction, if any, and they authorize, approve, or ratify it by vote or written consent; or

   c.   The contract or transaction is fair and reasonable as to the corporation at the time it is authorized by the board, a committee, or the members.

54. Pursuant to Fla. Stat. §617.0832(1) Mr. Julio Lago and Mr. Anthony Cecchini would have been disqualified from voting on the approval of the FIRST CONDO contract due to the various conflicts that exist between them; Mr. Lago because he is Mr. Juan Carlos Lago's brother and is alleged to have a financial stake in FIRST CONDO, and Mr. Cecchini because he serves on the board of Trojan Park Condominium along with Mr. Julio Lago, in a property also managed by FIRST CONDO, under a basic fiduciary duty it is sufficient enough conflict to merit his abstention on the matter.

55. Since the Association was only a three person board, that would only leave one Board Member, Ms. Arteche, would preclude a quorum on the matter and by default should have left the matter open to a community vote as to whether to accept FIRST CONDO's services.

56. Additionally, pursuant to Florida Statute §617.0832 (b) the agreement between FIRST CONDO and the Association is not fair and reasonable.

57. Based on the above factors, the adoption of the FIRST CONDO contract was clearly in violation of Fla. Stat. §617.0832 and therefore void.

58. The Association has no adequate remedy at law.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, requests this Court grant the relief it is seeking and rescind the June 15, 2012 agreement in favor of Kendall Lake Towers Condominium Association, Inc, and grant such other and further relief as this Court deems just and proper, including but not limited to an award of attorneys' fees and Court costs pursuant to Florida Law.

## COUNT III- BREACH OF CONTRACT

59. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

60. From 2008 through 2012 First Condo Management ("FIRST CONDO") was retained in yearly contracts to manage the condominium management services for Kendall Lake Towers Condominium Association, Inc ("Association" or "KLT"), with the June 15, 2012 agreement being the latest agreement entered into between the Association and FIRST CONDO.

61. The June 15, 2012 was a 5 year term, through the end of May 2017.

62. The Association performed its required duties and obligations pursuant to the June 15, 2012 agreement.

63. Prior to the agreement expiring, FIRST CONDO breached its duties pursuant to the contract by refusing to acknowledge the Association's new Board, and instructing its workers not to report to the Association's property, and failing to provide financial information to the Association and its unit owners and other management services it provided to the Association.

64. First Condo intentionally breached its contract with the Association when it failed to provide services after the recall of the Prior KLT Board.

65. The Association was forced to retain the services of Universal Property Management to serve as its CAM and Property Manager to insure continuity of operations in the community.

66. In addition to the foregoing, First Condo breached its contractual obligations due to:

  a.  Charging Exorbitant Rates; and

  b.  Failure to disclose to the Membership of the Association the relationship of Juan Carlos Lago and Julio Lago; and

  c.  Failure to account for the $ 1,000,000.00 in insurance proceeds received by the Association; and

  d.  Failure to bring suit to collect the converter fees which were due to the Association and collected by Julio Lago's Development Company; and

  e.  Failure to properly account for the Association's money.  This failure is attributed to but not limited to, the large discrepancies between the "turn over" audits and

the actual books.  First Condo had a duty to address the discrepancies in the missing funds of the Association and they did not; and

f.  Failure to properly manage Association personnel when First Condo allowed Association personnel  to provide services to Juan Carlos Lago's properties while these employees were paid by the Association; and

g.  Passing Special Assessments which did not comply with Florida Law and which were designed to be oppressive to the community; and

h.  Aiding in the Association's execution of the APC Contract and First Condo's failure to require the Board to comply with Florida Law in executing the APC contract.

i.  Aiding President Julio Lago in arranging for the $ 374,000.00 kickback to be paid to Preferred/Julio Lago; and

j.  Deriving a financial benefit from the APC contract by serving as the Customer Representative under the APC agreement; and

k.  Failure to turn over the Association Records to the New KLT Board and/or its Receiver; and

67. The Association has retained the firm of John Paul Arcia, P.A. to prosecute this action and is obligated to pay its counsel a reasonable fee for legal services in this action. Pursuant to the Contract, the Association is entitled to recover attorney's fees and costs from FIRST CONDO should it be the prevailing party in this claim.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, demands judgment against Creditor First Condo Management., for compensatory damages, pre-judgment interest, and for such other and further relief as this Court deems just and proper.

## <u>COUNT IV – UNJUST ENRICHMENT</u>

68. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

69. The Association conferred a benefit on FIRST CONDO in that First Condo Participated through its family connection on the Board in the abusive over payment of management fees to First Condo.

70. Based on the numbers alleged in the Complaint, the Association has paid to First Condo over ten (10) times what it should have paid a management company that did not have such close ties to the persons awarding the contract.

71. FIRST CONDO has knowledge of the benefits retained by them.

72. FIRST CONDO retained the benefits conferred upon them.

73. First Condo did not have clean hands because it knew that the fees it was receiving were unjust and but for the family relationship, he would not have received a contract at such a high rate of pay and on such favorable terms.

74. First Condo's contractual obligations were to be the gate keeper to prevent exactly this type of self-dealing.

75. Instead of preventing the Self-Dealing, First Condo actively participated in the Self-Dealing.

76. It is inequitable for FIRST CONDO to retain the benefits of the massive overpayments received, when it knew or should have known this payment was unjust.

77. The Association has hired John Paul Arica, Esq for the enforcement of its rights and has become obligated to pay reasonable attorney fees.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association prays judgment against CREDITOR First Condo Management, Inc, for monetary damages, including the return of the overpayment of management fees, and for such other and further relief as this Court deems just and proper.

## COUNT V- NEGLIGENCE

78. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

79. First Condo owed a duty to the Association to provide management services and ensure the compliance of Florida Law in the administration of the condominium and to properly

account for the funds of the Association.

    80. First Condo breached its duties when it:

        a.   Failed to provide financial information,

        b.   General Mismanagement

        c.   Failure to provide a proper accounting of the Association's financial affairs,

        d.   Failure to account for the $ 1,000,000.00 in insurance proceeds received by the Association; and

        e.   Failure to bring suit to collect the converter fees which were due to the Association and collected by Julio Lago's Development Company; and

        f.   Failure to properly account for the Association's money.  This failure is attributed to but not limited to, the large discrepancies between the "turn over" audits and the actual books.  First Condo had a duty to address the discrepancies in the missing funds of the Association and they did not; and

        g.   Failure to properly manage Association personnel when First Condo allowed Association personnel  to provide services to Juan Carlos Lago's properties while these employees were paid by the Association; and

        h.   Passing Special Assessments which did not comply with Florida Law and which were designed to be oppressive to the community; and

        i.   Aiding in the Association's execution of the APC Contract and First Condo's failure to require the Board to comply with Florida Law in executing the APC contract.

        j.   Aiding President Julio Lago in arranging for the $ 374,000.00 kickback to be paid to Preferred/Julio Lago.

        k.   Deriving a financial benefit from the APC contract by serving as the Customer Representative under the APC agreement.

        l.   Failure to turn over the Association Records to the New KLT Board and/or its Receiver.

    81. The Association has been damaged by the Negligence of First Condo as it has spent substantial amounts of money in litigation, audits/accounting and was forced into Bankruptcy as a result of the Negligence of First Condo.

    82. The Association has retained the firm of John Paul Arcia, P.A. and Joel M. Aresty

P.A.to prosecute this action an is obligated to pay its counsel a reasonable fee for legal services in this action. Pursuant to the Contract, the Association is entitled to recover attorney's fees and costs from FIRST CONDO should it be the prevailing party in this claim

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc. demands judgment against Creditor First Condo Management, for compensatory damages, pre-judgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT VI- BREACH OF FIDUCIARY DUTY

83. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

84. At all times material, hereto, FIRST CONDO and its principal Juan Carlos Lago had a fiduciary relationship with the Association pursuant to the agreements entered into between FIRST CONDO and the Association.

85. The obligations of FIRST CONDO and its CAM Juan Carlos Lago to the Association include but are not limited to: provide general management, financial information management, maintenance of accounting records of the Association, and to provide and manage employees to provide the care and maintenance to the Association's property.

86. Importantly FIRST CONDO and its CAM Juan Carlos Lago had an obligation to act in the best interest of the Association and not engage in self-dealing with other companies and vendors in which it would receive a personal benefit.

87. FIRST CONDO and its CAM Juan Carlos Lago routinely engaged in self-dealing to the detriment of the Association.

88. The allegations set forth in this Complaint are sufficient to establish that First Condo and its Cam breached their Fiduciary Duty to the Association.

89. FIRST CONDO and its CAM Juan Carlos Lago did not act in the best interests of the Association.   Rather, FIRST CONDO and Juan Carlos Lago willfully and knowingly acted contrary to the interests of the Association breaching their fiduciary duties to the members of the Association.

90. As a direct and proximate result of the breaches of fiduciary duties by FIRST CONDO

91. and its CAM Juan Carlos Lago, the Association has been damaged as it has spent substantial amounts of money in litigation, audits/accounting and was forced into Bankruptcy as a result of the Breach of Fiduciary Duty of First Condo.

92. The Association has retained the firm of John Paul Arcia, P.A. and Joel M. Aresty P.A. to prosecute this  action an is obligated to pay its counsel a reasonable fee for legal services in this action. Pursuant to the Contract, the Association is entitled to recover attorney's fees and costs from FIRST CONDO should it be the prevailing party in this claim.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, demands judgment against Creditor First Condo Management., for damages, interest, attorneys' fees and costs of this action, as permitted under Florida Law. Further, the Association reserves the right to seek punitive damages against the Creditor First Condo Management.

## COUNT VII- ACCOUNTING

93. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

94. A fiduciary relationship existed between FIRST CONDO and the Association.

95. First Condo managed the business affairs of the Condo Association from 2008-2011.

96. When First Condo refused to continue to provide services to Association, it also refused to turn over the financial records of the Association in its possession.

97. The Association is entitled to an accounting from FIRST CONDO to determine the full extent to which the Association monies were collected, wasted, mismanaged and diverted.

98. The Association is also entitled to its financial records so that it can properly conducts its accounting activities.

99. The Association has no adequate remedy at law.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, demands judgment against Creditor First Condo Management., for damages, interest, attorneys' fees and costs of this action, as permitted under Florida Law, along with a full accounting of all Association funds collected by FIRST CONDO together with other and further relief as the Court may deem appropriate, including fees and costs.

### COUNT VIII- FAILURE TO TURNOVER RECORDS

100. Paragraphs 1 through 42 are hereby re-alleged as though fully set forth herein.

101. Rule 61E14-2.001(6)(a) of the Florida Administrative Code provides:

> *A licensee shall not withhold possession of any original books, records, accounts, funds, or other property of a community association when requested by the community association to deliver the same to the association upon reasonable notice…. The provisions of this rule apply regardless of any contractual or other dispute between the licensee and the community association.  It shall be considered gross misconduct, as provided by Section 468.436(2), F.S., for a licensee to violate the provisions of this subsection. [Emphasis added.]*

102. Since the time that FIRST CONDO abandoned its contract with the Association and stopped providing services to the Association, the Association has made numerous written requests to FIRST CONDO to turn over the Association's records.

103. To date the Association has failed to do so.

104. First Condo has intentionally held the records of the Association "hostage" due to

the dispute between the parties.  In the letter of November 5, 2012, First Condo advised the Association:

> "*we cannot consent to providing you with any more documentation until our invoices are fully paid and our property returned to us.*"

105.    The Association is without an adequate remedy at law.

106.    11 U.S. Code § 542 (a) Turnover of property to the estate, provides, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

**WHEREFORE**, DEBTOR, Kendall Lake Towers Condominium Association, Inc, demands judgment against Creditor First Condo Management., for damages, interest, attorneys' fees and costs of this action, as permitted under Florida Law, along with turning over the Association's entire records together with other and further relief as the Court may deem appropriate, including fees and costs.

Respectfully submitted March 30, 2017.

John Paul Arcia, P.A.
Special Counsel for Debtor
Latitude One Office Building
175 S.W. 7th Street Suite 2000
Miami, Florida 33130
parcia@arcialaw.com
(786) 429-0410 (Office)
(786) 477-4341 (Direct)
(786) 429-0411 (Fax)
FL Bar No.  73723

and
JOEL M. ARESTY, P.A.
Counsel for Debtor
309 1ST Ave S
Tierra Verde, FL 33715
Phone: 305-899-9876
Fax: 305-723-7893
E-mail: Aresty@Mac.com
By:/s/ Joel M. Aresty, Esq.
Fla. Bar No. 197483